UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. BRIDGERS,<br><br>    Petitioner,<br><br>    v.<br><br>J. GASTELO,<br><br>    Respondent. | No. 2:18-cv-0481 KJM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2015 conviction for carjacking and other related crimes, including personally using a firearm during the repossession of his vehicle. Petitioner was sentenced to thirteen years in state prison. Petitioner claims that the conviction for carjacking was not supported by substantial evidence. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

On April 29, 2015, a jury found petitioner guilty of two counts of carjacking, two counts of assault with a deadly weapon, and two counts of making criminal threats. (ECF No. 14-9 at 244 [Clerk's Transcript "CT" 239].) The jury also found related firearm enhancements to be true. (Id.) On June 10, 2015, petitioner was sentenced to thirteen years in state prison. (Id.)

1

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. In his opening brief, petitioner argued that the conviction for carjacking was not supported by substantial evidence in violation of the Fifth and Fourteenth Amendments, and Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). (ECF No. 1 at 15.) The Court of Appeal affirmed the conviction on January 9, 2017. (ECF No. 1 at 21.)

Petitioner filed a petition for review in the California Supreme Court. (ECF No. 14-4.) Although appellate counsel identified the question presented as, "[w]hether the judicial definition of carjacking has become too broad?" petitioner argued that his carjacking conviction was not supported by substantial evidence, citing, *inter alia*, the Fifth and Fourteenth Amendments, and Jackson, 443 U.S. at 318. (ECF No. 14-4 at 8-11.) The California Supreme Court denied the petition without comment on March 15, 2017. (ECF No. 14-5.)

Petitioner filed the instant petition on March 5, 2018. (ECF No. 1.)

III. Facts and Procedural Background[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Joseph Lyneill Bridgers was sentenced to 13 years in state prison after a jury found him guilty of two counts of carjacking, two counts of assault with a firearm, and two counts of making criminal threats, and found related firearm enhancements true. On appeal, defendant contends there was insufficient evidence to support the carjacking convictions. We affirm the judgment.
>
> FACTUAL BACKGROUND
>
> The evidence, viewed in the light most favorable to the trial court's judgment (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480), is as follows:
>
> In February 2014, defendant purchased a 2004 Chevy Tahoe financed through Lobel Financial, an auto loan company (Lobel). Defendant's last payment on the auto loan was on May 30, 2014. Despite numerous efforts by Lobel to contact defendant, no arrangements were made to bring the account current and Lobel

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Bridgers, No. C079532 (January 9, 2017), a copy of which was lodged by respondent as ECF No. 14-1 on July 17, 2018.

2

initiated repossession, assigning the matter to Northern Valley Recovery, a vehicle repossession company.

Andy Williams and his brother Johnny Smith, both employees of Northern Valley Recovery, repossessed vehicles using a 2011 Chevy Silverado tow truck with "a Minute Man XD" wheel lift on the back. Once they received the repossession order from Lobel, Williams searched online and confirmed defendant's account was "still active," as was his practice.

On July 27, 2014, Williams and Smith went to defendant's home to repossess the Chevy Tahoe, which was parked in the driveway facing the house. Smith lowered the tow bar and backed the tow truck up to the rear of the Tahoe while Williams verified the vehicle identification number (VIN) on the Tahoe and gave Smith the "thumbs up." Smith attached the tow bar to the rear wheels of defendant's car, and lifted up the back of the car. Both Williams and Smith testified that, although the straps were not yet attached to the rear wheels, they could have driven off with the Tahoe in tow.

Defendant's wife came out of the house. Smith got out of the tow truck and he and Williams showed her the paperwork from Lobel and explained that they were there to repossess the Tahoe. Defendant's wife told Williams she had spoken to the finance company and had made arrangements to make a payment.

After speaking with Williams for a few minutes, defendant's wife went back inside the house and emerged within 30 seconds with defendant, who was wearing just his boxer shorts. Defendant wandered over to the driver's side of the Tahoe. Williams and Smith explained to defendant that they were there to repossess the Tahoe, and offered him the opportunity to collect personal items out of the car before it was repossessed. Defendant opened the car door and stood in the doorway for a couple of minutes, and then said, "I gotta go to work tonight. I can't let you take it." He pulled a handgun out of the car, pointed it at Williams as he walked to within two feet of Williams and said, "Drop the car." Williams immediately backed up and said, "[O]kay, we'll get out of here. Don't worry about it." Williams told Smith to drop the car. Smith quickly walked to the tow truck, followed by defendant who was now pointing the gun at him. Smith and Williams got into the tow truck and Smith lowered defendant's car using the control pad. Williams heard defendant say, "[Y]ou guys aren't moving fast enough. I'm going to start shooting at your truck."[FN 1] Once defendant's car was lowered, Smith raised the tow bar and he and Williams drove away, scraping the tow bar on the curb. They stopped several houses down on the opposite side of the street and called the police. As Williams dialed 911, defendant got into the Tahoe and drove away.

[FN 1: Smith testified defendant said something like, "[Y]ou better hurry, or I'm going to shoot at your truck and shoot at you."]

Approximately one month later, Sacramento County Sheriff's Detective Mike French stopped defendant as he was backing out of his driveway in the Chevy Tahoe. French found a loaded .45-caliber

3

> handgun in a nylon holster between the driver's seat and the center console.
>
> PROCEDURAL HISTORY
>
> Defendant was charged by amended felony complaint with two counts of carjacking (Pen. Code, § 215, subd. (a) -- counts one & two), two counts of assault with a firearm (§ 245, subd. (a)(2) -- counts three & four),[FN 2] and two counts of making criminal threats (§ 422 -- counts five & six). The amended complaint alleged defendant personally used a firearm in the commission of counts one and two (§ 12022.53, subd. (b)), and personally used a firearm in the commission of counts three through six, causing those offenses to become serious and violent felonies (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)).
>
> [FN 2: Undesignated statutory references are to the Penal Code.]
>
> Following a trial, the jury found defendant guilty on all counts and found true each of the firearm enhancements.
>
> The trial court denied probation and sentenced defendant to 13 years in state prison, comprised of the low term of three years on count one, plus 10 years for the related firearm enhancement, a concurrent three-year term on count two, and a concurrent 10-year term for the related firearm enhancement. The court also imposed but stayed pursuant to section 654 a three-year term on count three, a four-year term for the firearm enhancement, a three-year term on count four, plus a four-year term for the firearm enhancement; a two-year term on count five, plus four years for the firearm enhancement; and a two-year term on count six, plus four years for the firearm enhancement. The court awarded defendant 92 days of presentence custody credit (80 actual days plus 12 days of conduct credit).

People v. Bridgers, slip op. at 1-3. (See also ECF No. 14-1 at 1-3.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

4

court proceedings unless the adjudication of the claim -

>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v.

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be

5

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous."'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of

---

overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate

7

1 that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Alleged Insufficiency of the Evidence

    A. The Parties' Positions

Incorporating the arguments from his opening brief on direct appeal, in which counsel compared petitioner's case to People v. Coleman, 146 Cal. App. 4th at 1363, petitioner claims that there was insufficient evidence to demonstrate that Williams and Smith were no more vulnerable or at greater risk of harm than the victim in People v. Coleman. Williams and Smith were not occupants of the vehicle, were not abducted from the vehicle, and their possession of the vehicle was not comparable to that of a driver because only the tow mechanism of their truck was connected to the vehicle. Petitioner further argues that the risk posed was no greater than the risk surrounding an armed second-degree robbery, which is the crime for which he should have been charged. For all these reasons, petitioner argues the carjacking conviction was not supported by substantial evidence and must be reversed.

Respondent counters that petitioner's arguments fail to address the sufficiency of the evidence, but rather address the alleged insufficiency of the elements of the carjacking crime. Respondent argues that petitioner may not ask this court to reexamine the state court's determination of how carjacking is defined under California law. Moreover, respondent contends that because petitioner failed to demonstrate that the trial record did not provide an evidentiary basis to support the carjacking conviction, he fails to meet the "highly deferential standard for evaluating state-court rulings," and improperly seeks a de novo assessment of the sufficiency of the evidence. (ECF No. 13 at 12, citing Cullen v. Pinholster, 563 U.S. 170, 203 n.20 (2011).) Thus, respondent argues that the petition must be denied based on a "lack of proof of an exception to § 2254(d)'s relitigation bar." (ECF No. 13 at 12-13.)

In reply, petitioner contends that this court is empowered to conduct a de novo review of the sufficiency of the evidence under Jackson, 443 U.S. at 307. Petitioner argues that: he was the "active owner" of the vehicle and had contacted the loan company to arrange for payment; neither of the victims had "lawful possession" of the vehicle, which was parked on petitioner's property in his driveway; and petitioner did not have the requisite state of mind or intent because he was awakened from sleep and without notice, believed a payment arrangement was in effect, and was angry and concerned about being able to get to work and keep his job. (ECF No. 17 at 2-3.) Petitioner contends that the element of force and fear is addressed by the recent ruling in Solorio-Ruiz v. Sessions, 881 F.3d 733 (9th Cir. 2018) (court redefined the nature of carjacking from violent to nonviolent). (ECF No. 17 at 3.) Petitioner reasserts his argument that the statutory elements of carjacking offense were not met, and the offense should have been charged as a second degree robbery. (ECF No. 17 at 4.)

B. The State Court Decision

Because the California Supreme Court summarily denied petitioner's state habeas petition, the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal was the only state court decision to address the claims in the instant federal petition. Therefore, this court reviews the state appellate court's reasoned decision. The state court addressed petitioner's claim as follows:

DISCUSSION

"A conviction for carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by using force or fear and (5) with the intent of temporarily or permanently depriving the person of possession of the vehicle. (Pen. Code, § 215, subd. (a); *People v. Hill* (2000) 23 Cal.4th 853, 858-859.)" (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534.)

Defendant contends his convictions for carjacking were not supported by substantial evidence. Finding support in *People v. Coleman* (2007) 146 Cal.App.4th 1363 (*Coleman*), he claims Williams and Smith were not occupants of the Tahoe, were not abducted from it, and had only minimal possession of it, and the risk to the public at large was no greater than it would be during the

9

course of a second degree robbery. The claim lacks merit.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer*, supra, 38 Cal.4th at pp. 479-480; accord, *People v. Smith* (2005) 37 Cal.4th 733, 739 [assessing the credibility of witnesses remains the exclusive province of the trial judge or jury].)

"A single witness's uncorroborated testimony, unless physically impossible or inherently improbable, is sufficient to sustain a conviction [citation]." (*People v. Elwood* (1988) 199 Cal.App.3d 1365, 1372; accord, *People v. Young* (2005) 34 Cal.4th 1149, 1181 [uncorroborated testimony of a single witness is sufficient to sustain conviction].) To be inherently improbable, the inaccuracy of the testimony " ' "must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" ' " (*People v. Mayberry* (1975) 15 Cal.3d 143, 150.)

We acknowledge that the circumstances here are unlike the classic carjacking scenario, where an armed perpetrator approaches a vehicle, uses force or fear to take the vehicle from the driver, and drives the car away. Nonetheless, there is substantial evidence here that defendant carjacked the Tahoe from Williams and Smith.

Both Williams and Smith testified that defendant pulled a gun on them and threatened them, telling them to "drop the car" and telling them he would shoot at their truck because they were moving too slow. Both men testified unequivocally that, when defendant pulled out the gun and threatened them, the tow mechanism was connected to the Tahoe and the back of the Tahoe had been lifted a sufficient distance to enable them to drive off with the vehicle in tow. At that point, the repossession was complete, the Tahoe, which was in the possession and immediate presence of Williams and Smith, was no longer defendant's vehicle. [FN 3] In response to defendant's armed threats, Williams and Smith "dropped" the Tahoe, disengaged the

10

tow mechanism from the rear wheels, and drove off in the tow truck. Williams and Smith testified, and defendant did not dispute, that he got into the Tahoe and drove away with the intent to deprive Williams and Smith of its possession. These facts substantiate a carjacking.

[FN 3: The jury was instructed that "[a] repossession is complete if the collateral becomes connected to the repossessor's tow vehicle." Defendant did not object to the instruction and does not dispute it on appeal.]

Defendant's reliance on *Coleman* to support his claim of insufficient evidence is misplaced. There, a shop owner drove his Chevy Silverado to the shop, put the keys in a work area in the back of the shop, and drove away from the shop in a different truck. (*Coleman*, supra, 146 Cal.App.4th at p. 1366.) During the owner's absence, the defendant entered the shop, pointed a gun at the office manager, and demanded she give him the keys to the Silverado. (*Ibid.*) The office manager retrieved the Silverado's keys from the back of the shop and gave them to the defendant. (*Ibid.*) A jury convicted the defendant of robbery and carjacking. (*Id.* at p. 1365.) The Court of Appeal reversed the carjacking conviction. (*Id.* at p. 1374.) Acknowledging that "a carjacking may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle," the appellate court found the circumstances were "simply too far removed from the type of conduct that [the carjacking statute] was designed to address" because the office manager "was not within any physical proximity to the Silverado, the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the Silverado." (*Id.* at p. 1373.)

Here, unlike *Coleman*, Williams and Smith were both in close proximity to the Tahoe, which they had connected to the tow truck and lifted off the ground. At that point, the repossession of the Tahoe was complete and in the possession and immediate presence of Williams and Smith, who were preparing to tow it away. While at gun point and under threat, they relinquished possession and control of the vehicle by "dropping" it (i.e., disconnecting it from the tow truck). Defendant then immediately used the keys to drive the vehicle away. *Coleman* is distinguishable.

Without challenging any of the elements of carjacking required by section 215, subdivision (a), defendant claims Williams and Smith were "no more vulnerable or at greater risk of harm than the victim in *Coleman*." The claim is errant and irrelevant. The *Coleman* court found there was insufficient evidence to support the carjacking conviction based on the fact that the office manager was nowhere near the Silverado, she relinquished keys to a vehicle that did not belong to her, and there was no evidence she ever was or would be a

11

driver or a passenger of that vehicle. (*Coleman*, supra, 146 Cal.App.4th at p. 1373.) While the *Coleman* court noted the Legislature's reason for enacting the carjacking statute was that " 'carjacking is a particularly serious crime that victimizes persons in vulnerable settings' and, because of the nature of the offense, creates the great potential for harm to not only the victim and perpetrator but also the public at large' [citations]" (*Id.* at p. 1369), it did not add a particular level of vulnerability or risk of harm to the public as additional elements to those required by the statute. In any event, defendant's conduct did in fact create a significant potential for harm to Williams, Smith, defendant himself (had Williams or Smith attempted to disarm defendant or otherwise defend themselves), defendant's wife, and anyone in the vicinity. And there is no question Williams and Smith were in a vulnerable setting given they were standing in front of defendant's house attempting to repossess defendant's vehicle, an emotionally charged situation at the very least.

Defendant makes much of the fact Williams and Smith were neither occupants of the Tahoe nor were they abducted from it. He also argues their degree of possession of the Tahoe was lesser than that of a driver, as "[o]nly the tow mechanism" was connected to the Tahoe. These claims are untenable. The jury was instructed and found connection of the tow mechanism to the Tahoe completed the repossession. Moreover, section 215 does not require the victim to be abducted from the vehicle and, as the *Coleman* court noted, "a carjacking may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle." (*Coleman*, supra, 146 Cal.App.4th at p. 1373.)

We conclude there was substantial evidence to support defendant's convictions for carjacking.

People v. Bridgers, slip op. at 4-8.

### C. Governing Legal Standards

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011). "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, 566 U.S. 650, 655 (2012) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted). If the record supports conflicting inferences, the reviewing court "must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam) (quoting Jackson, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the court must view the evidence in the "light most favorable to the prosecution." Jackson, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." Coleman v. Johnson, 566 U.S. at 655. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Under Jackson, the court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. Drayden v. White, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (as amended). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting Boyer v. Belleque, 659 F.3d 957, 960 (9th Cir. 2011)). See also Coleman v. Johnson, 566 U.S. at 651 ("Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); Kyzar v. Ryan, 780 F.3d 940, 943 (9th Cir. 2015) (same).

D. Discussion

Petitioner's arguments that his crime was more appropriately charged as second degree robbery, does not fit the rationale supporting the crime of carjacking under California law, or that the victims were "no more vulnerable or at greater risk of harm than the victim in [People v.] Coleman," are unavailing on habeas review. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); see also Hicks v. Feiock, 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference). Here, as argued by respondent, petitioner challenges the trial court's purported misapplication of California's law regarding carjacking. Such challenges fail because petitioner asserts only alleged errors in state law. See Wainwright v. Goode, 464 U.S. 78, 84 (1983) ("the views of the state's highest court with respect to state law are binding on the federal courts"); see also Bradshaw, 564 U.S. at 76.

But in any event, petitioner's arguments do not establish that the state court acted unreasonably when it found the evidence sufficient to affirm petitioner's conviction for carjacking. The California Supreme Court has held that the California standard for determining the sufficiency of evidence to support a conviction is identical to the federal standard enunciated by the United States Supreme Court in Jackson, 443 U.S. at 319. People v. Johnson, 26 Cal.3d

557, 576, 162 Cal. Rptr. 431 (1980). On federal habeas review, this court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983. Viewing the evidence adduced at trial in the light most favorable to the prosecution, the undersigned concurs with the conclusion of the state appellate court that there was sufficient evidence to support petitioner's conviction for carjacking. The testimony of the victims (Smith and Williams), as described by the state appellate court (ECF No. 14-1 at 6), established that petitioner took a motor vehicle; from the immediate presence of the victims who possessed the vehicle because it was connected to their towing mechanism; the vehicle was taken against the victims' will; by pulling a gun and making threats, petitioner used force or fear to take the vehicle and prevent the victims from repossessing it; and, while using such force or fear, petitioner intended to deprive the victims of possession of the vehicle by driving the vehicle from the scene; thus meeting all of the elements of carjacking under California law. (ECF No. 14-6 at 104-05, 112-17; 128, 131; 135; 147; 151-53; 156-59; 168-74; 182-87 (Williams); ECF No. 14-6 at 193-94; 196; 199-205; 219; 222-27; 230-32; 236-39; 241-43; 245; 246-51; 262-63 (Smith); See also ECF No. 49-9 at 194-95 (jury instruction).)

        Although petitioner and his wife testified contrary to the victims, the victims' testimony was sufficient evidence. As previously stated, this court reviews the evidence in the light most favorable to the prosecution and presumes the jury resolved any conflicts in favor of the prosecution. McDaniel, 558 U.S. at 133. The jury was presented with all the evidence, including the contradictory eyewitness statements by petitioner and his wife. The jury assessed the credibility of all of the witnesses. "[T]he assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). This court must presume that the jury resolved such evidentiary conflicts in favor of the prosecution and found the victims' testimony credible. See Jackson, 443 U.S. at 326. Therefore, the court cannot say it was unreasonable for the state appellate court to find that there was sufficient evidence to support the conviction of carjacking.

        Finally, Solorio-Ruiz v. Sessions, 881 F.3d 733 (9th Cir. 2018), is inapposite. In Solorio-Ruiz, the Court of Appeals for the Ninth Circuit granted a Mexican citizen's petition for review

challenging the Board of Immigration Appeals ("BIA") order of removal after the BIA found that the California carjacking conviction constituted an aggravated felony, a "crime of violence" under INA § 101(a)(43)(F) [8 U.S.C. § 1101(a)(43)(F)]. Solorio-Ruiz, supra. The Ninth Circuit held that Solorio-Ruiz' conviction for carjacking no longer qualified as a crime of violence under the INA in light of Johnson v. United States, 559 U.S. 133, 140 (2010). Solorio-Ruiz, supra. The question of whether or not carjacking is a crime of violence under INA § 101(a)(43)(F) for the purposes of determining removal of a noncitizen from the United States is not the same question as to whether petitioner used force or fear to take the vehicle from the victims here. Thus, petitioner's reliance on Solorio-Ruiz is unavailing. In any event, as discussed above, the record reflects that petitioner used force or fear to prevent the victims from repossessing the vehicle by pulling a handgun from the vehicle, pointing it at both victims, and threatening to shoot their truck because they were moving too slow.

For all of the above reasons, the undersigned concludes that the state courts' denial of petitioner's sufficiency of the evidence claims was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, and it was not an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Therefore, petitioner is not entitled to habeas relief.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 19, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/brid0481.157